Green, J.
delivered the opinion of the court.
This is a bill to set up a parol mortgage of several negroes. In March, 1843, the complainant being indebted to Carney upward of fourteen hundred dollars, confessed several judgments in all for the amount so due, before a justice of the peace. In April, executions were levied on the three negroes in controversy, and they were sold by the constable; Carney, the creditor, becoming the purchaser. For eleven hundred dollars of this debt, Carney had personal security, but he took judgments against Harris alone; as the bill alleges, upon an agreement, and understanding, that he was to buy these negroes and hold them as security for his debt.
*350 The evidence satisfies, us, that some arrangement of this sort did exist between these parties.
Harris was deeply involved in debt, and his consent that the debt to Carney should be split up, and judgments confessed, renders it very probable that some arrangement existed for his benefit; otherwise he would have had no motive to give this creditor such an advantage. The fact, that Carney having security for so large an amount of his debt, should have taken judgment against Harris alone, is persuasive that some understanding existed between them. These facts, though taken alone, would have little weight; yet, when coupled with the other evidence, constitute important circumstances. After the sale, Carney said to one witness, that the negroes were subject to redemption; and to another, that Harris might redeem them; and to others, that all he wanted was his money.
These facts, especially, the declaration, that the negroes were subject to redemption, prove something more than the existence of a kind and liberal feeling towards a necessitous debtor. They show that the party spoke in reference to an obligation existing between himself and Harris; and when we look to the circumstances attending the confession of judgment, and sale of the negroes; to the evasions of both Harris and Carney, on the day of the sale, when spoken to on the subject; and to the fact, that the negroes sold for much less money than they were worth, we are led satisfactorily to the conclusion, that the obligation existed, by virtue of a contract, entered into before the execution sale, whereby Carney was to make the purchase, and hold the slaves as security for his debt
*351 In this veiw of the subject, the transfer of the' legal title to Carney, by means of the execution sale, would constitute the transaction a mortgage.
This case is much stronger in the proof, in favor of the complainant, than the case of Loyd vs. Curran, (3 Hum. R., 462,) and in that case, Curran expressly denied in his answer, the existence of any contract; while in the case before us, the answer is put in by an administrator, who can make no such denial.
Another view of the subject deserves consideration. In this case, as in the case of Loyd vs. Curran, the entire conduct of the parties at the sale, was such, as to create the belief that the property was to be purchased for the benefit of the debtor, and bidders were thereby deterred from the competition which otherwise would have existed. This, the court say in that case, was sufficient to create a trust for the benefit of the debtor. But in that case, the statute of limitations was pleaded, and the court held, that the statute applies to cases of implied trusts, and was therefore a bar to the relief. But in this case, the defendants do not rely on the statute of limitations, in their answer, and therefore, there is nothing to prevent a decree, on the ground of a trust.
But we think the existence of a contract, amounting to a mortgage, is established by the proof, and therefore, affirm the decree in that view of the case.